NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE GEORGE LEON FAMILY TRUST, Derivatively on behalf of JOHNSON & JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> MARY SUE COLEMAN, PH.D., *et al.*, <br><br> Defendants <br><br> -and- <br><br> JOHNSON & JOHNSON, <br><br> Nominal Defendant. | Civil Action No. 12-cv-4401 (JAP) <br><br> **OPINION** |

PISANO, District Judge

Plaintiff the George Leon Family Trust ("Plaintiff") brought a shareholder derivative action against nominal defendant Johnson & Johnson ("J&J") and its Board of Directors (collectively "Defendants"). Presently before the Court is a motion to dismiss Plaintiff's Amended Complaint or in the alternative, for summary judgment, brought by J&J[1] [Docket # 35]. The Court heard oral argument on this matter on March 12, 2014. For the reasons set forth

---

[1] The individual defendants, Mary Sue Coleman, Ph.D., James G. Cullen, Ian E.L. Davis, Michael M.E. Johns, M.D., Arnold G. Langbo, Susan L. Lindquist, Ph. D., Anne M. Mulcahy, Leo F. Mullin, William D. Perez, Charles O. Prince, III, David Satcher, M.D., Ph.D., Ronald A. Williams and William C. Weldon join J&J in their motion. Docket # 36.

1

below, Defendants' motion for summary judgment is GRANTED and Defendants' motion to dismiss is DENIED as moot.

I.     **BACKGROUND**

J&J is a global healthcare company incorporated in New Jersey with over 250 subsidiaries worldwide. During the period of time relevant to Plaintiff's allegations, William C. Weldon served as J&J's Chief Executive Officer. Plaintiff, the George Leon Family Trust, is a J&J shareholder. In sum and substance, Plaintiff alleges that the members of J&J's Board breached their fiduciary duties by overcompensating Mr. Weldon in light of product recalls and other investigations and lawsuits involving J&J subsidiaries and by making misrepresentations in proxy statements relating to Mr. Weldon's compensation in violation of J&J's Credo.

**A. Related Shareholder Derivative Action and the 2011 Special Committee Report**

The recalls, investigations and lawsuits underlying Plaintiff's allegations were the subject of a separate group of consolidated shareholder derivative suits filed in 2010 (the "Related Action").[2] *See In re Johnson & Johnson Derivative Litigation,* 865 F. Supp. 2d 545 (D.N.J. 2011). In response to the allegations and demands made by the shareholders in the Related Action, in April 2010, the J&J Board established a Special Committee composed of the four most recent directors to join the Board: Charles Prince, Michael Johns, Anne Mulcahy, and William Perez. The Special Committee retained independent counsel Douglas Eakeley of Lowenstein Sandler PC, and commenced a yearlong investigation into whether J&J should pursue various claims against J&J officers and directors based on the shareholders' allegations.

In June 2011, the Special Committee issued its report (the "2011 Report") and recommended, based on its investigation, that J&J not pursue litigation. *See* Opposition, Ex. A.

---

[2] For a full recitation of the facts underlying the allegations of the shareholders in the related action, *see In re Johnson & Johnson Derivative Litigation,* 865 F. Supp. 2d 545, 554 (D.N.J. 2011).

As relevant to the present action, the Special Committee found that there was "no evidence that Mr. Weldon engaged in or had knowledge of any wrongdoing" and concluded that there was "no breach of fiduciary duty" by Mr. Weldon. *Id.* at 4, 58, 120. In July 2011, the Board accepted the recommendation of the Special Committee and decided not to pursue litigation based on the shareholders' allegations. Following the Board's decision, the claims of the plaintiffs who did not make a demand on the Board were dismissed without prejudice on September 29, 2011. *Johnson & Johnson,* 865 F. Supp. 2d at 554. On October 26, 2013, the Court approved a settlement of the shareholders' claims, which did not include the claims of excessive compensation made by Plaintiff in the present action. *In re Johnson & Johnson Derivative Litigation,* 900 F. Supp. 2d 467 (D.N.J. 2012).

### B. Plaintiff's Original Complaint and Demand on the Board

Plaintiff filed its first complaint on September 1, 2011, alleging that a demand on J&J's Board regarding Plaintiff's allegations would be futile. Civ. Action No. 11-5084, Docket # 1. Subsequently, the parties submitted a stipulation of voluntary dismissal of the Complaint to allow Plaintiff to make a demand upon the Board and the Complaint was dismissed without prejudice on January 31, 2012. *Id.* at Docket # 32.

Subsequently, Plaintiff made a written demand on the Board alleging that the "Board's compensation decisions as to Mr. Weldon have harmed J&J . . . [and] have disconnected the Credo from manner of performance pay principles, resulting in false proxy statements and the unjust enrichment of Mr. Weldon." Am. Compl., Exhibit A at 21. Plaintiff's letter demanded that the Board take action to: (1) strengthen the connection between executive compensation and practices and adherence to the values embodied in the J&J Credo; (2) identify all facts in the 2011 Report that constitute a failure to meet the values embodied in the Credo; (3) correct

disclosures to J&J shareholders concerning Mr. Weldon's manner of performance; (4) follow J&J guiding principles for executive compensation by adjusting Mr. Weldon's past, present and retirement compensation and long-term incentive rewards downwards to properly reflect Mr. Weldon's accountability and long-term performance; (5) retain an independent compensation consultant to test executive manner of performance against adherence to Credo values; and (6) work with Plaintiff's counsel and advisors to resolve Plaintiff's claims. *Id.* at 21-22.

### C. The Alito Report

At its meeting on February 14, 2012, the Board authorized an independent investigation into Plaintiff's allegations and retained Rosemary Alito of K&L Gates, LLP, to conduct the investigation.[3] The board empowered Ms. Alito to fully investigate Plaintiff's allegations and agreed to "provide whatever resources Ms. Alito need[ed] to conduct a thorough and independent investigation." Chia Dec., Ex. A at 6. Following the Board's resolution, Ms. Alito commenced a comprehensive investigation into the shareholders' demands, which lasted over a year, and included, with full cooperation of the J&J Board, 24 interviews with 19 individuals both inside and outside of J&J, and a review of over 17,000 pages of documents pertaining to the shareholders' allegations and demands.

On June 5, 2013, Ms. Alito delivered a detailed 116-page report (the "Alito Report") detailing the findings of her investigation to the Board. Alito Dec., Ex. A. The Report concluded that

> [N]either the allegations made in the Demands of legally excessive compensation nor the allegations of materially false and misleading disclosures are well founded. As a result, the Company would be unlikely to succeed on the merits if the Board elected to pursue derivative litigation based on the claims made in the Demands. Moreover, the Company would not be likely to recover any amounts in such litigation, and the litigation

---

[3] Mr. Weldon did not participate in the discussion or adoption of the Board's resolution authorizing Ms. Alito's investigation. Chia Dec., Ex. A at 6.

4

would likely come at consideration cost to the Company in terms of legal fees and disruption to the Company's business operations. Alito Report at 115.

Ms. Alito found that J&J's independent directors were "independent, disinterested individuals who actively and in good faith engaged in their duties" and concluded that all of the compensation decisions were "within the range of reasonableness, and were consistent with the Company's Credo, history, culture, and compensation philosophy." *Id.* at 116.

Ms. Alito further concluded that all of the disclosures challenged by Plaintiff were supported by facts in the record and that the Board had been responsive to "shareholder sentiment and the changing landscape of executive compensation, and enacted major changes to both its compensation philosophy and the structure of its long-term incentive compensation program." *Id.* Ms. Alito also noted that the Board followed a comprehensive and detailed process for setting compensation and that J&J's "say on pay" proposal received a majority vote of approval from J&J's shareholders with 93 percent voting in favor. *Id.* at 93.

Ms. Alito presented her findings and conclusion that it would not be in J&J's best interest to pursue derivative litigation based on Plaintiff's allegations and recommended to the Board that J&J reject Plaintiff's demands. Following a discussion of Ms. Alito's investigation and the opportunity to ask questions related to the Report's findings, the ten present directors[4] unanimously adopted the following resolution:

> The Board . . . hereby unanimously adopts the recommendations of the Report. The shareholder demands considered by Ms. Alito are refused as contrary to the best interests of the Company, the Board declines to have the Company pursue the litigation contemplated in the shareholder demands, and the Board directs that the Company take such steps as are necessary or appropriate to secure dismissal of the derivative litigation. Chia Dec., Ex. B at 18.

---

[4] Mr. Gorsky, the Chairman and CEO, was excused from the vote because he was a member of management and James Cullen was not able to be present at the Board meeting.

On June 14, 2013, J&J's outside counsel informed Plaintiff that the demand had been refused by the Board and a copy of the Alito Report was provided to Plaintiff's counsel on June 21, 2013.

**D. Plaintiff's Amended Complaint**

On October 7, 2013, Plaintiff filed an Amended Complaint [Docket # 30], which addressed the Alito Report and the Board's refusal of Plaintiff's demands and is the subject of Defendants' present motion.[5] According to Plaintiff, since at least February 2010, the Board has been investigating and responding to shareholder demands "concerning the negative fallout following J&J's extraordinary compliance and quality problems that occurred under the leadership of J&J's former Chairman and CEO, William C. Weldon." Am. Compl. ¶ 5. Plaintiff claims that J&J's executive compensation policies "require the Board to adhere to J&J's Credo through both conventional 'pay for performance' measures and, additionally, through evaluation of the manner in which the executive achieves that 'performance' relative to the Credo." *Id.* ¶ 6. Plaintiff refers to this policy as the "manner of performance" compensation policy, and Plaintiff's claims stem "from the Board's failure to follow J&J's 'manner of performance' compensation policies, particularly in connection with awards to [Mr.] Weldon." *Id.* ¶ 6.

Plaintiff alleges that Mr. Weldon was overcompensated by J&J and paid around "four times the average amount of compensation as the next most-highly paid J&J 'named executive officers." *Id.* ¶ 7. According to Plaintiff, "[s]uch extraordinary compensation should go hand-in-hand with extraordinary levels of responsibility and positive performance." *Id.* ¶ 8. However, Plaintiff claims that Mr. Weldon failed to maintain a level of responsibility commensurate with his "lavish" compensation and was "ultimately responsible and accountable for leading J&J into

---

[5] Plaintiff's initial Complaint in this action was filed on July 13, 2012, prior to Plaintiff's receipt of the Alito Report. Docket # 1. Defendants filed a motion to dismiss Plaintiff's Complaint or in the alternative for summary judgment on September 16, 2013. Docket # 28. Thereafter, Plaintiff filed the Amended Complaint. Docket # 30.

6

the gauntlet of problems that did not adhere to the J&J Credo, that will cost J&J billions in lost sales and remediation, and that harmed J&J's reputation." *Id.* Plaintiff claims that following Mr. Weldon's public acceptance of responsibility for problems "that had beset J&J and its sterling reputation" the Board raised Mr. Weldon's compensation in violation of J&J's Credo. Opposition at 13. Plaintiff also alleges that Proxy Statements issued by the Board which reflected positively on Mr. Weldon's performance during the period in question were false and misleading.

The Amended Complaint claims that Board failed to conduct an adequate and independent investigation and therefore wrongfully refused Plaintiff's demands. Plaintiff's argument is largely based on the assertion that the 2011 Report was not used to investigate Plaintiff's demands. According to Plaintiff, the Special Committee's investigation is essential to Plaintiff's demand because it "developed important evidence concerning the numerous and extraordinary compliance failures, regulatory, consumer and quality issues faced by J&J that are related to 'manner of performance Credo-value issues." Am. Compl. ¶ 13. Plaintiff claims that the Board's alleged failure to consider the 2011 Report constitutes the "willful exclusion of its most comprehensive investigation and evidence of 'manner of performance' issues" and renders Ms. Alito's investigation "fundamentally flawed." *Id.* ¶ 16. Plaintiff also claims that K&L Gates was conflicted by their representation of a separate party in a lawsuit involving J&J[6] and that the Board failed to consider the possibility of recoupment from Mr. Weldon.

On November 15, 2013, J&J filed the present motion to dismiss Plaintiff's Amended Complaint, or in the alternative for summary judgment. Plaintiff opposes J&J's motion [Docket

---

[6] In the Related Action, the shareholders alleged that J&J subsidiaries paid kickbacks to Omnicare, Inc. ("Omnicare"). *Johnson & Johnson,* 865 F. Supp. 2d 552. Plaintiff claims that K&L Gates' prior representation of Omnicare constitutes a conflict of interest preventing Ms. Alito from conducting an independent investigation into Plaintiff's allegations. Am. Compl. ¶ 61-62.

7

# 39] and argues that the Board's decision to reject Plaintiff's demand is not entitled to protection under the business judgment rule because: (1) the Board did not utilize the 2011 Report or related investigation: (2) the Board did not investigate or analyze compensation recoupment from Mr. Weldon; (3) the Board did not investigate bases to remediate J&J's executive compensation practices; (4) the Board's reliance on the Alito Report is improper because of possible conflicts of interest; and (5) the Board failed properly weigh the options of pursuing litigation or settling Plaintiff's claims against outright rejection of Plaintiff's demands.

**II.    DISCUSSION**

Defendants move to dismiss Plaintiff's Amended Complaint or in the alternative, for summary judgment. In the context of a Rule 12(b)(6) motion, if materials "outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Plaintiff was provided with a copy of the Alito Report before filing the Amended Complaint and Plaintiff's Amended Complaint references and relies upon the Alito Report. Therefore, the Court's consideration of the Alito Report on a motion under Rule 12(b)(6) is proper. However, both parties have submitted extensive materials to the Court outside the scope of the Amended Complaint related to Defendants' motion, including Ms. Alito's Declaration which bears heavily on Plaintiff's claims. Therefore, because the Court's ruling is not limited "to the face of the complaint" the Court must consider defendants motion as one for summary judgment. *Fagin v. Gilmartin,* 432 F.3d 276, 286 (3d Cir. 2005) (citing *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir. 1992)).

Summary judgment is governed by Federal Rule of Civil Procedure 56, and is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

8

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Under Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the nonmoving party. *Healy v. N.Y. Life Ins. Co.,* 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The moving party bears the initial burden of proving that no genuine issue of material fact is in dispute. *Celotex,* 477 U.S. at 323. Whether or not a fact is material is determined according to the substantive law at issue. *Anderson,* 477 U.S. at 248. Once the moving party has carried this burden, the non-moving party must present evidence that a genuine fact issue compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.,* not just "some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Its opposition must rest on "facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

In establishing whether there is a disputed material fact, "[t]he nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson,* 447 U.S. at 255). The Court shall not "weigh the evidence and determine the truth of the matter," but need only determine whether a genuine issue necessitates a trial. *Anderson,* 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America,* 974 F.2d 1358, 1363 (3d Cir. 1992).

### A. New Jersey's Modified Business Judgment Rule

"When a shareholder makes a demand on a corporation's board of directors and the board refuses the demand, it is the court's task to review the response of the board." *Fagin v. Gilmartin,* 2007 WL 2176482, at *15 (N.J. Super. Ct. Ch. Div. July 19, 2007). New Jersey's test for whether a shareholder demand was properly rejected is a modified business judgment rule. *In re PSE & G S'holder Litig.* 801 A.2d 295, 312 (N.J. 2002). The modified business judgment rule "imposes an initial burden on a corporation to demonstrate that in deciding to reject or terminate a shareholder's suit the members of the Board (1) were independent and disinterested, (2) acted in good faith and with due care in their investigation of the shareholder's allegations, and that (3) the board's decision was reasonable." *Id.*

### i. Independent and Disinterested Directors

The first inquiry under the modified business judgment rule is "whether defendants have satisfied their burden of showing that the Board was 'disinterested' and 'independent' when it decided to terminate the litigation." *PSE & G,* 801 A.2d at 314. Directors are self-interested "when divided loyalties are present, or where the director stands to receive a personal financial gain from the transaction not equally shared by the shareholders." *Id.* (quoting *In re Prudential Ins. Co. Derivative Litig.,* 659 A.2d 961 (N.J. Super. Ct. App. Div. 1995)). "A director is not to be viewed as being 'interested' merely because he or she may have approved the challenged transaction or because a shareholder alleges that the director would be reluctant to sue a fellow corporate decision-maker." *Id.*

While Defendants have the initial burden under the modified business judgment rule to demonstrate that the directors acted in a disinterested manner, "[d]epositions or certifications that state that the decision to reject the demand and terminate the suit was based on factors relating to

10

the best interest of the corporation and not on extraneous considerations is sufficient to demonstrate independence." *Fagin,* 2007 WL 2176482, at *16. The minutes and resolution from the Board's meeting on June 11, 2013, demonstrate that the Board unanimously adopted the recommendations of the Alito Report, and state that the "shareholder demands considered by Ms. Alito are refused as contrary to the best interests of [J&J]" and the Board therefore "declines to have [J&J] pursue litigation contemplated in the shareholder demands. . ."[7] Chia Dec., Ex. B at 5.

Plaintiff alleges that directors' independence was "impacted" by the Board's decision to reject the demand and not pursue claims against Mr. Weldon and asserts that the Board decided not to pursue claims against Mr. Weldon in order to avoid liability in the present suit "for their violations of their duties of loyalty and candor." Opposition at 35. According to Plaintiff, when "the Board decided to forego claims against Mr. Weldon, it was also secretly privy to negotiations with the DOJ that would lead to a Corporate Integrity Agreement that provides for valuable recoupment claims against Mr. Weldon." *Id.*

Under the Corporate Integrity Agreement, the recoupment claim Plaintiff asserts is premised on a finding of "significant misconduct" or the knowledge of significant misconduct and applies only prospectively. Opposition, Ex. E, App'x D at 2-3. However, the Special Committee determined through their investigation that Mr. Weldon did not engage in or have any knowledge of any wrongdoing, which would preclude a viable recoupment claim against him. Therefore, Plaintiff's assertion that the Board's independence was compromised by the knowledge of recoupment claims contained in the Corporate Integrity Agreement is without merit.

---

[7] In her report and recommendation to J&J, Ms. Alito concluded that "there are no potential defendants that would be entitled to retain a significant improper benefit if the Demands are rejected." Alito Report at 115.

11

Where competent evidence is presented to the Court demonstrating the directors' independence and there is nothing in the record to convince the Court that "the directors had divided loyalties, stood to receive any impersonal, or were unduly influenced by any improper motive" the Court will not find that the directors were interested. *Fagin,* 2007 WL 2176482, at *16 (citation omitted). Here, Defendants have presented evidence demonstrating the independence of the directors and Plaintiff has failed to present any evidence rebutting Defendants' statements of independence or supporting the claim that the directors insulated themselves from liability for allegedly breaching their duties of good faith and loyalty to J&J and therefore stood to gain by terminating this litigation. Accordingly, the Court finds that the evidence demonstrates that the directors were disinterested and independent.

### ii. Good Faith

The next inquiry focuses on whether the board acted in good faith and with due care in investigating the merits of the claims and rejecting or terminating the shareholder litigation. *PSE & G,* 801 A.2d at 315. In determining good faith, "the court's inquiry is not into the substantive decision of the board, but rather is into the procedures employed by the board in making its determination." *Id.* While "there is no prescribed procedure that a board must follow . . . the process should be such that a reviewing court can look to it and conclude confidently that it reflects a corporation's earnest attempt to investigate a shareholder's complaint." *Id.* (citations omitted). Stated differently, the Court must assess whether the "investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or half hearted as to constitute a pretext or sham." *Id.* (citations omitted).

Here, the record demonstrates that the Board acted with good faith in investigating the merits of the claims and rejecting Plaintiff's demand. In response to Plaintiff's demand regarding

the alleged excessive compensation and false and misleading proxy statements regarding the compensation, the Board retained Ms. Alito and K&L Gates to conduct an independent investigation and report the facts and circumstances surrounding the shareholders' allegations to the Board. Ms. Alito's comprehensive investigation into Plaintiff's demands lasted over a year and included, with full cooperation of the J&J Board, interviews with 19 individuals, inside and outside of J&J, and a review of over 17,000 pages of documents pertaining to the shareholders' allegations and demands.

The core of Plaintiff's argument against the good faith of the Board's investigation is the assertion that the Board failed to review 2011 Report, and in doing so, "turned a blind eye" to readily available and relevant information bearing on Plaintiff's demands. Opposition at 25. Plaintiff claims that "Defendants proffer no evidence that the Board considered . . . the [2011 Report] in connection with Plaintiff's demands." *Id.* at 6. However, in Ms. Alito's Declaration, she clearly states that at the start of her investigation, she was provided with and reviewed a copy of the 2011 Report. Alito Dec. at 5. According to Ms. Alito, she accepted the conclusions contained in the 2011 Report and "explored all areas of inquiry . . . [she] believed necessary to fully investigate the allegations of the complaints and demands" made by Plaintiff, which did not require her to repeat the investigation surrounding the 2011 Report. *Id.*

Plaintiff also alleges that the Board failed to exercise good faith and due care in hiring Ms. Alito to investigate Plaintiff's demands. According to Plaintiff, the Board had actual or constructive knowledge the K&L Gates was conflicted from investigating Plaintiff's demands on matters related to Omnicare based on K&L Gates' prior representation of Omnicare. However, Ms. Alito investigated possible conflicts of interest and found that none existed and Plaintiff has failed to present any evidence to the contrary.

13

Accordingly, upon review of the Alito Report, it is clear to the Court that Plaintiff's demands were investigated in depth and rejected by the Board in good faith. The procedures employed by the Board and Ms. Alito demonstrate the seriousness by which the Board regarded Plaintiff's demands and satisfy the Court that the Board acted in good faith in rejecting the litigation demanded by Plaintiff.

### iii. Reasonableness

The final inquiry under the modified business judgment rule is whether defendants have demonstrated that the Board's decision to reject the demand and terminate the litigation was reasonable. *PSE & G*, 801 A.2d at 318. When evaluating the reasonableness of the Board's decision, courts consider "all relevant justifications for management's determination, including the seriousness and weight of the plaintiff's allegations." *Id*. The Board is entitled to weigh and evaluate the chances of economic success of the derivative action against the financial and intangible costs of defending the suit. *Id*.

The record clearly demonstrates that the Board had a reasonable basis for deciding to reject Plaintiff's demands. The Board hired Ms. Alito to conduct an in-depth investigation into Plaintiff's allegations and the resulting 116-page report concluded that it would not be in J&J's best interest to pursue litigation based on Plaintiff's demands. Ms. Alito and the attorneys assisting her made numerous document requests to J&J and created and reviewed a database of more than 17,000 pages. Included in the database were the minutes of the Board and Committee meetings from 2006 to 2011, all executive compensation related materials for Board meetings, CEO Assessments prepared for J&J, corporate documents reflecting J&J's policies, procedures and Credo, email correspondence between involved J&J management and Committee members, and Annual Reports and Proxy statements from 2007 through 2012. Alito Report at 15-16. K&L

Gates also conducted interviews of 19 individuals who were either involved in the compensation process or otherwise relevant to the investigation. *Id.*

Through her investigation, Ms. Alito found that Plaintiff's allegations of excessive compensation and false and misleading proxy statements were without merit, and as a result, J&J would be unlikely to succeed on the merits of those claims if the Board elected to pursue derivative litigation. Further, Ms. Alito found that litigation based on Plaintiff's demands would come at considerable cost to J&J in terms of legal fees and disruption to the J&J's business operations. Specifically, Ms. Alito concluded that the Board "established and followed a comprehensive and exacting procedure for setting compensation targets, establishing performance goals and determining compensation . . . [and] all decisions under review were within the range of reasonableness, and were consistent with [J&J's] Credo, history, culture, and compensation philosophy." *Id.* at 116.

Furthermore, Plaintiff's claims based on director liability for excessive executive compensation and failure to adhere to a company's aspirational values are unlikely to succeed even if pursued by J&J. Plaintiff's executive compensation claims would likely fail because "directors have the power, authority and wide discretion to make decisions on executive compensation" and "the business judgment rule's presumption of good faith and regularity carries particular force when the challenged decision concerns employee compensation." *Seidman v. Clifton Savings Bank, S.L.A.,* 2009 WL 2513797, at *9 (N.J. Super. Ct. App. Div. Aug. 19, 2009) (citations omitted).

Plaintiff's claims seeking to impose director liability for the alleged failure to adhere to J&J's Credo would also be unsuccessful. In addressing similar allegations in the Related Action that the Board of J&J did not live up to aspirational ideals, the Court noted that "the law of

corporate fiduciary duties and remedies for violation of those duties are distinct from the aspirational goals of ideal corporate governance practice." *Johnson & Johnson,* 865 F. Supp. 2d at 559-60. Therefore, because "aspirational ideas of good corporate governance practices for boards of directors . . . do not define the standards of liability," Plaintiff's assertion of director liability for alleged failure to adhere to J&J's Credo is unlikely to succeed. *Id.* at 560. Furthermore, Plaintiff has failed to demonstrate any violation of the Credo by the directors in their compensation decisions related to Mr. Weldon.

Upon review of the Alito Report and the related documentation submitted by the parties, the Court is satisfied that "[b]y virtue of the procedures that it employed, the Board informed itself of the substance of the shareholders' allegations and weighed those allegations against the likelihood that the litigation would succeed." *PSE & G,* 801 A.2d at 318. Accordingly, based on the seriousness with which Defendants investigated and considered Plaintiff's allegations, the Court finds that J&J had a reasonable basis for rejecting Plaintiff's demand.

Therefore, because the undisputed facts establish that the Board: (1) was independent and disinterested; (2) acted in good faith and with due care in their investigation of Plaintiff's allegations; and (3) made a reasonable decision to not pursue litigation based on Plaintiff's demands, the Court finds that Plaintiff has failed to demonstrate any genuine issue of material fact and Defendants are entitled to judgment as a matter of law. Accordingly, the Court grants Defendants' motion for summary judgment.

### B. Plaintiff's Request for Discovery Pursuant to Rule 56(d)

Plaintiff claims that the Court should deny or defer ruling on Defendants' motion and order discovery into the Board's rejection of Plaintiff's demands. Specifically, Plaintiff seeks: (1) all board and committee minutes related to shareholder demands; (2) the documents reviewed

and compiled for the 2011 Report and the Alito Report; (3) communications between the Board and K&L Gates; (4) documents related to K&L Gates' representation of Omnicare; (5) documents related to DOJ investigations, guilty pleas and state government lawsuits; and (6) documents related to the Special Committee's formation, mandate and investigation. Harper Dec. at 1-3.

According to Plaintiff, "[d]iscovery into the relevant matters is expected in a judicial review of shareholder derivative litigation where the corporation controls the evidence." Opposition at 3. In support of their request for discovery, Plaintiff relies on the New Jersey Supreme Court's opinion in *PSE & G,* which states that under the modified business judgment rule, "a plaintiff is entitled to a degree of discovery prior to a court's ruling on whether a corporation properly has determined to reject or terminate the litigation." *PSE & G,* 801 A.2d at 312. However, in *Fagin,* the Third Circuit held that "[a]lthough the New Jersey Supreme Court's opinion in *PSE & G* makes limited discovery a mandatory part of its demand-refused procedure . . . this procedural state rule does not apply in Federal Court." *Fagin,* 432 F.3d at n.2. Accordingly, District Courts are not bound by New Jersey's mandatory discovery rule and instead must exercise their discretion as to the extent of discovery needed to decide the issue. *Id.*

Here, the Court finds that summary judgment is proper without additional discovery. The parties have submitted extensive documentation and the Court is unpersuaded that the additional discovery sought will validate Plaintiff's claims against the Board. Accordingly, Plaintiff's motion for discovery pursuant to Federal Rule of Procedure 56(d) is denied.

## IV.     CONCLUSION

Based on the foregoing reasons, J&J's Motion for Summary Judgment [Docket # 35] is GRANTED and J&J's Motion to Dismiss Plaintiff's Amended Complaint is DENIED as moot. An appropriate Order accompanies this Opinion.

Date:  June 25, 2014                                                  /s/ Joel A. Pisano
                                                                                     JOEL A. PISANO
                                                                                     United States District Judge